Filed 3/11/24  P. v. Zamora CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FRANCISCO URIAS ZAMORA,<br><br>    Defendant and Appellant. | D082264<br><br><br><br>(Super. Ct. No. INF2000580) |

APPEAL from a judgment of the Superior Court of Riverside County, Alfonso Fernandez, Judge.  (Retired judge of the Santa Clara Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

Francisco Urias Zamora was charged with (1) two counts of aggravated sexual assault of C.G., a child under 14 years of age, based on underlying acts of forcible sodomy and forcible oral copulation (Pen. Code, § 269, subds. (a)(3) & (4); counts 1 and 3); and (2) five counts of forcible lewd acts on C.G. (*id.*, § 288, subd. (b)(1); counts 2 and 4 through 7). Zamora claimed C.G. initiated inappropriate sexual acts but adamantly denied any acts of sodomy or oral copulation occurred. A jury convicted him of all seven charged offenses.

Zamora claims the trial court prejudicially: (1) abused its discretion in excluding evidence Zamora offered under Evidence Code section 782 that C.G. had initiated certain sexual behaviors with his younger half-sister; and (2) erred in omitting the "without consent" element from its jury instruction on forcible sodomy. We disagree. First, we conclude the trial court properly found any minimal probative value of the excluded evidence substantially outweighed by Evidence Code section 352 factors, given the lack of factual similarity between the charged incidents and the proffered evidence. Second, even assuming the trial court's forcible sodomy instruction was erroneous, we find the error harmless beyond a reasonable doubt on the uncontroverted evidence before the jury of C.G.'s lack of consent to any act of sodomy. We accordingly affirm.

## I.

First, Zamora argues the trial court prejudicially erred by excluding evidence C.G. had initiated sexual acts with his sister purportedly similar to those Zamora contends C.G. initiated with him. We conclude the trial court did not abuse its discretion in excluding this evidence. (*People v. Fontana* (2010) 49 Cal.4th 351, 370 (*Fontana*).)

2

## A.

"Evidence of the sexual conduct of a complaining witness is admissible in a prosecution for a sex-related offense only under very strict conditions." (*Fontana*, *supra*, 49 Cal.4th at p. 362.)  Such evidence is inadmissible to prove the complaining witness's consent but potentially admissible to attack his or her credibility.  (Evid. Code, § 1103, subds. (c)(1) & (5).)  To present such evidence, the defendant must file a motion supported by an offer of proof.  (*Id.*, § 782, subds. (a)(1)-(2).)  If adequate, the trial court must hold a hearing outside the jury's presence to determine if the proposed evidence is (1) relevant and (2) inadmissible under section 352.  (*Id.*, subds. (a)(3)-(4).)  Section 352 vests the trial court with discretion to exclude relevant evidence "if its probative value is substantially outweighed by . . . undue consumption of time or . . . substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  (*Id.*, § 352.)  Only if the proffered evidence clears these hurdles is it admitted.  (*Id.*, § 782, subd. (a)(4).)

Our Supreme Court has held these provisions "represent[ ] a valid determination that victims of sex-related offenses deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy."  (*Fontana*, *supra*, 49 Cal.4th at p. 362.)  This policy encourages the reporting of possible sex crimes "[b]y affording victims protection in most instances" from potentially embarrassing testimony about their sexual history.  (*Id.* at pp. 362, 370.)  Section 782 thus should be read narrowly so the exception does not swallow the rule.  (*Id.* at p. 363.)

## B.

Zamora filed a section 782 motion seeking to introduce two items of evidence.  The first was that C.G. had viewed pornography in the past. Zamora argued this evidence was relevant to both (1) show C.G.'s sexual

knowledge was not attributable to Zamora and (2) C.G.'s motive to "downplay any of his actions" and "shift the focus" to Zamora, given C.G. had been disciplined severely for this. The People opposed, claiming the evidence was (1) irrelevant, as C.G. had received sex education in school, and (2) highly prejudicial.

Second, Zamora sought to introduce evidence that C.G. had (1) on three occasions "held [his sister] down on the bed[ ] and attempted to touch her vaginal area over the clothes," and (2) once "touch[ed] her vagina over her underwear" while she was sleeping. The sister disclosed this information in a forensic interview following C.G.'s allegations against Zamora. Zamora again sought to introduce this evidence for prior knowledge and motive, but additionally "to prove conformity of character" and bolster Zamora's credibility. Zamora claimed the evidence corroborated his version of events and was "an act involving moral turpitude" relevant to C.G.'s credibility. The People contended this "extremely inflammatory" evidence was (1) "exactly what the rape shield laws were designed to protect against" and (2) irrelevant, as an 11-year-old child is incapable of acts of moral turpitude.

The trial court found the pornography evidence admissible "so we don't have . . . jurors coming to that conclusion that where else would the alleged victim have learned this." As to the other evidence, the trial court stated: "I'm not really sure it's relevant. If it is, I'm going to disallow it coming in under [section] 352 of the Evidence Code because there's a substantial danger of it confusing the issues or misleading the jury. And it almost seems like it's going out on a tangent of some sort."

C.

We conclude the trial court did not abuse its discretion in questioning the relevance of the proffered evidence to C.G.'s credibility. To be admissible,

4

the complaining witness's prior sexual acts must be "similar to the acts of which the defendant stands accused." (*People v. Daggett* (1990) 225 Cal.App.3d 751, 757.) C.G.'s minor sister claimed C.G. attempted to, and once did, touch her clothed genitalia with his hand. These acts bear no similarity to those charged against Zamora, including forcing C.G. to touch and masturbate Zamora's unclothed penis, forcing C.G. to orally copulate him, and forcibly sodomizing C.G. Even were we to compare the sister's allegations with Zamora's version of events, we agree with the People that any similarity is superficial. There is a significant difference between a preadolescent boy initiating sexual contact between his hand and a clothed minor female's genitalia and the same boy initiating sexual contact with his own genitalia, including without clothing, with a grown man and father figure by physically forcing the adult's hand. (See *Diaz v. SATF-SP, Corcoran CA* (E.D. Cal., June 18, 2014, No. 1:12-CV-00399 JLT) 2014 WL 2767392, at pp. *11-*13.) The trial court implicitly and correctly found the relevance of this testimony minimal at best.

We further determine the trial court correctly excluded the evidence under section 352, as significant countervailing concerns far outweighed any minimal probative value. Zamora claims "[t]he evidence was not likely to confuse or mislead the jury," as its source was not suspect, the People did not argue its falsity, and it "would not require a mini-trial." According to Zamora, the evidence would require, at most, (1) cross-examining three witnesses already called as witnesses: C.G., his mother, and the social worker who interviewed C.G. and his siblings; (2) calling the sister; and (3) calling the social worker who interviewed the sister about the disclosure. We cannot conclude the court abused its discretion in finding this unduly time-consuming in a trial spanning eight court days, including five of

5

testimony.  The risk of confusion was also great given the tangential relevance of the evidence, as already explained.  The trial court's stated reasons alone thus justified exclusion.

While Zamora notes the trial court did not expressly rely on prejudice, "[w]e review the trial court's decision, not its reasoning, and will affirm the trial court's order if it reached the correct result." (*People v. Accredited Surety & Casualty Co.* (2022) 77 Cal.App.5th 185, 190.)  Prejudice was the People's main reason for requesting exclusion, and both parties briefed prejudice on appeal.  The evidence's significant prejudice to C.G. and his minor sister further justified exclusion.  As the People argue, jurors could have drawn a negative inference unrelated to credibility about C.G.'s character from this evidence that could adversely impact the verdict.  More fundamentally, the policy underlying the rape shield law—to safeguard victims' privacy—is relevant to the prejudice inquiry.  (*Fontana, supra,* 49 Cal.4th at p. 370.)  Here, not only was C.G.'s privacy interest at risk, but also that of his minor sister.  This further confirms the court's sound exercise of its discretion.

Ultimately, the trial court did not exclude wholesale the evidence relevant to Zamora's defense such that his right to present a defense was violated.  (*People v. Mestas* (2013) 217 Cal.App.4th 1509, 1517.)  The court partially granted Zamora's motion, admitting the pornography evidence. Further, Zamora had ample opportunity to attack C.G.'s credibility during cross-examination.  Zamora's counsel probed C.G.'s possible motive to lie and the alleged inconsistencies and improbabilities in his testimony, hammering these points during closing argument.  On this record, the trial court did not abuse its discretion.

## II.

Second, Zamora claims the trial court prejudicially erred in omitting from the jury instruction on forcible sodomy the element that the victim did not consent. Whether lack of consent is an element of certain sex offenses involving minors is unsettled. (See *People v. Young* (1987) 190 Cal.App.3d 248, 257 [consent in child sex offenses a question of fact]; *People v. Soto* (2011) 51 Cal.4th 229, 247-248 [minors lack capacity to consent to sexual acts regardless of their actual state of mind].) But even assuming instructional error of federal constitutional dimension, we determine it harmless under *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).[1]

## A.

As relevant here, Penal Code section 286 declares it a crime for a person to "commit[ ] an act of sodomy with another person who is under 14 years of age when the act is accomplished against the victim's will by means of force[ or] duress." (Pen. Code, § 286, subd. (c)(2)(B).) The standard jury instruction includes three elements: (1) an act of sodomy, (2) "[t]he other person did not consent to the act," and, pertinent to this matter, (3) the act was accomplished by force or duress. (CALCRIM No. 1030.) At the People's request and over Zamora's objection, the trial court's jury instruction omitted the second element on the basis a minor lacks the capacity to legally consent.

---

[1] As we assume error occurred, we need not address Zamora's claim that the prosecutor's statements during closing argument about the quantum of force necessary for forcible sodomy failed to cure this error. Nonetheless, we note Zamora is mistaken that the prosecutor wrongly defined "force," as it has a common meaning in the sodomy statute. (*People v. Griffin* (2004) 33 Cal.4th 1015, 1024-1028.) For the same reason, we need not address Zamora's arguments on alternative theory error.

Under *Chapman*, "[w]e review the evidence in the light most favorable to the defendant" without "reweigh[ing] the evidence or resolv[ing] evidentiary conflicts." (*People v. Madrigal* (2023) 93 Cal.App.5th 219, 243.) Where a jury instruction omits an element of the offense, "[e]ven when the prosecution's case is strong, the error is not harmless if the record contains evidence that could rationally lead to a contrary finding." (*Ibid.*) In other words, such instructional error *is* harmless if "the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." (*Neder v. United States* (1999) 527 U.S. 1, 17.)

## B.

The jury was presented with two accounts of the incident underlying count 1: C.G.'s and Zamora's.

The jury heard two versions of C.G.'s account: (1) his trial testimony and (2) the videorecording of his second forensic interview. During the forensic interview, C.G. said Zamora, in the middle of the night, entered the bedroom C.G. and his brother shared. C.G. was sleeping on the bed, and his brother, "a deep sleeper," was on a trundle bed. C.G. awoke when he heard his bed creak and Zamora call him by his nickname. Zamora got into the bed next to C.G. and took C.G.'s shorts off. C.G. tried to pull them back on, but Zamora prevented him. Zamora took out his own "private part" and started rubbing it on C.G.'s bottom. He lifted one of C.G.'s "butt cheeks" with his hand. Zamora was "tryin' to put his private part in" C.G.'s anus. It went in "[a] little bit," and Zamora "tr[ied] to put more in." C.G. said it felt "cold" because of the air conditioning. C.G. "turned around . . . real quick" and put his shorts back on to stop the encounter. C.G. denied ever "ask[ing] or sa[ying] something to [Zamora] about wanting to" engage in any such

8

conduct. C.G.'s trial testimony was largely consistent. His memory was clearer at the time of his forensic interview, but the transcript refreshed his recollection. Using a water bottle and a tissue box, C.G. demonstrated that the tip of Zamora's penis went inside his anus for "about a second before [C.G.] turned around." C.G. did not "want that to happen."

Meanwhile, the jury heard Zamora's account via a videorecording of his police interview. Zamora claimed he was awake in bed with C.G.'s mother at night. C.G. climbed into the bed and under the blanket, and C.G.'s mother left the room. Zamora hugged C.G., who "grabbed [Zamora's] hand so that [Zamora would] grab [C.G.]." Zamora tried to move away, but C.G. moved closer. Zamora felt C.G. pull his boxers down, but they had no skin-to-skin contact because they "only hugged" "[f]rom a distance." Zamora asked, "'Are you sure about what you want to do?'" C.G. nodded, and Zamora left the room. He was adamant he "didn't do anything to [C.G.]" after C.G. pulled down his boxers. He said if he "would've wanted to" "'[p]ut it in [C.G.]'" he "would've done it," "[b]ut [he] didn't."

The People introduced evidence that child victims of sexual abuse: frequently delay disclosing abuse, if they disclose it at all; initially may reveal only portions of the abuse; sometimes require a second forensic interview; and may struggle to recall or sequentially recount abuse given their trauma. C.G. had an initial interview in May 2020, during which he disclosed the incidents underlying counts 5 through 7. During a second interview a month later, he disclosed the sodomy and oral copulation incidents. C.G. "didn't tell [the interviewer] . . . the complete . . . story" the first time, but what he said previously was "completely true."

During closing arguments, Zamora's counsel focused on undermining C.G.'s credibility. He argued the "physical unlikelihood" of and

9

inconsistencies in C.G.'s testimony as to all the charged acts, not simply the sodomy count. As to the sodomy incident specifically, Zamora's counsel questioned how Zamora could have accomplished the act without waking anyone and without C.G.'s mother noticing. Zamora's counsel also questioned how C.G. could have stopped a forcible encounter by simply "roll[ing] over" and how "Zamora's erect penis" could be "cold." More generally, Zamora's counsel suggested C.G. had "a strong motivation" to deny initiating the acts, having been grounded for viewing pornography. Further, were Zamora guilty, he would "have flown the coop" rather than meet C.G. and his mother at the police station to be interviewed. Consent was not mentioned.

The People also did not address consent in closing. They focused on Zamora's motive to lie and C.G.'s lack of motive. They noted Zamora's answers changed over his police interview while C.G.'s story was consistent despite his embarrassment and plausible lapses in memory.

The jury was then instructed that the testimony of a single witness can prove a fact, on how to weigh and assess the credibility of evidence, and on how to use circumstantial evidence in determining Zamora's guilt. The jurors repeatedly were admonished it was the People's burden to prove Zamora's guilt beyond a reasonable doubt.

After two hours of deliberation and no substantive questions, the jury convicted Zamora of all the charged counts, rejecting the lesser included offenses.

### C.

On this record, we "conclude[ ] beyond a reasonable doubt" that the trial court's failure to instruct the jury that lack of consent was an element of count 1 "did not contribute to the verdict." (*People v. Chun* (2009) 45 Cal.4th

10

1172, 1201.) Contrary to Zamora's claims, even if the given instruction did not require the jury to affirmatively find Zamora sodomized C.G. against his will, it is indisputable that, given the evidence and verdicts, the jury would have so found had it been properly instructed. (*In re Lopez* (2023) 14 Cal.5th 562, 592.)

The evidence presented to the jury was that Zamora either (1) never sodomized C.G. at all or (2) sodomized C.G. despite his unequivocal unwillingness. C.G. clearly expressed he (1) did not want the sodomy to happen and (2) almost immediately stopped it by physically turning over to interrupt the act. Zamora's defense, meanwhile, focused solely on disproving the first element of forcible sodomy, the act itself, without addressing the second element of lack of consent. Thus, despite Zamora's claims to the contrary, there was *no* evidence introduced to support an intermediate scenario in which Zamora sodomized C.G. with C.G.'s consent. Zamora is correct that jurors are "not limited to accepting" or "reject[ing] a witness's testimony in full." But a jury *is* limited by the evidence before it. Here, a finding of consensual sodomy would require speculating that something "in between" what was presented to the jury had occurred. Such unsubstantiated "'mere possible doubt'" is not reasonable doubt. (Pen. Code, § 1096.)

We are not persuaded by the People's claim that the jury necessarily decided C.G.'s lack of consent by convicting Zamora of count 3 (aggravated assault premised on forcible oral copulation). As Zamora notes, the oral copulation and sodomy incidents were distinct acts; thus, the jury's finding of no consent in the one instance does not necessarily carry over to the other. Nonetheless, given the speed with which the jury found Zamora guilty of all the charged offenses, it universally credited C.G.'s version of events over

11

Zamora's. The unambiguous evidence of C.G.'s lack of consent, uncontradicted by any conflicting evidence, establishes beyond a reasonable doubt the jury would have convicted Zamora of count 1 even had it been instructed that lack of consent was an element of the crime. And as C.G. did not consent, any force beyond that required for the act itself was force overcoming his will.

Accordingly, we conclude any error in the trial court's failure to instruct the jury that lack of consent is an element of count 1 was harmless beyond a reasonable doubt. Given the evidence before it, the jury, properly instructed, would have reached the same result.

III.

We affirm.

CASTILLO, J.

WE CONCUR:


McCONNELL, P. J.


DATO, J.

12